**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| NANCY ELIZABETH KEMP, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. CIV-24-99-G |
| | ) |
| PRESTON COX, in his individual | ) |
| capacity, et al., | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

Now before the Court is Defendant Tim Tipton's Motion to Dismiss (Doc. No. 13), seeking dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Nancy Elizabeth Kemp has responded in opposition (Doc. No. 17), and Defendant Tipton has replied (Doc. No. 18). Having reviewed the parties' submissions and the relevant record, the Court makes its determination.

I.   SUMMARY OF THE PLEADINGS

In this action, Plaintiff brings federal and state-law claims against Preston Cox, a Trooper with the Oklahoma Highway Patrol ("OHP"), in his individual capacity; Tim Tipton, the Commissioner of OHP, in his individual capacity; and the State of Oklahoma *ex rel.* Department of Public Safety. *See* Compl. (Doc. No. 1) at 1-2.[1]

---

[1] Defendants Cox and State of Oklahoma *ex rel.* Department of Public Safety have each filed an answer to the Complaint. *See* Doc. Nos. 10, 14.

Plaintiff alleges the following:

On the evening of May 11, 2022, Defendant Cox while on patrol in Logan County, Oklahoma, pulled over Plaintiff's vehicle based on Plaintiff's "alleged misuse of her car's high beam lights." *Id.* ¶¶ 8-9. After approaching the vehicle, Defendant Cox directed Plaintiff to sit in his patrol vehicle. *Id.* ¶ 10. Plaintiff explained to Defendant Cox that she was uncomfortable with this. *Id.* Defendant Cox insisted that "[t]his is how we do things; it makes it easier and go faster." *Id.*

On her way to Defendant Cox's vehicle, Plaintiff texted her daughter that she had been pulled over. *Id.* ¶ 11. As Plaintiff and Defendant Cox entered the patrol vehicle, Defendant Cox "became extremely aggressive and angry" and yelled at Plaintiff for sending the text message. *Id.* Plaintiff told Defendant Cox that she had "consumed only one tequila-based mixed drink" earlier that evening. *Id.* ¶ 12.

Defendant Cox placed Plaintiff in the front seat of his patrol vehicle while he questioned her and ran her driver's license. *Id.* ¶ 13. Plaintiff, who was 68 years of age and weighed 135 pounds, was nervous due to being in the vehicle alone with Defendant Cox at night. *Id.* ¶¶ 12, 14. While Defendant Cox continued to ask Plaintiff questions, he placed his vehicle in reverse without explanation. *Id.* ¶ 15. This "startled" Plaintiff, and she told Defendant Cox she preferred to wait outside his vehicle. *Id.* ¶ 16. Then, "in a state of fear," she "attempted to exit the patrol vehicle in a non-threatening manner." *Id.*

Defendant Cox responded by grabbing Plaintiff by the hair and forcefully striking her head and face against the dashboard two times. *Id.* ¶ 17. Defendant Cox then "dove" from the driver's seat toward Plaintiff, handcuffed her, and "tackl[ed] her out of his vehicle

2

and onto the ground." *Id.* ¶ 18.  "[F]or several minutes," during which Plaintiff remained handcuffed, Defendant Cox "stomped on her foot and used his elbow, fists and knees" to hit her "face, ribs, arms and wrists." *Id.* ¶¶ 19-20.

Plaintiff "suffer[ed] severe injuries and bruises to her entire body." *Id.* ¶ 20. Plaintiff was arrested and transported to a hospital, where she was treated for "several broken ribs, a broken foot, a broken nose," and "significant bruising to her entire face and body." *Id.* ¶ 21.

Defendant Tipton is not alleged to have been present at the scene but to have participated as a supervisor at OHP by creating and implementing OHP policies regarding use of force and also training and overseeing OHP troopers regarding use of force. *See id.* ¶ 30.  Upon Plaintiff's information and belief, Defendant Tipton knew "OHP troopers had a policy, practice, and/or custom of using unreasonably excessive force on compliant and subdued" individuals "who posed no threat to law enforcement officers or anyone else." *Id.* ¶ 33.  When reports of excessive force by OHP troopers were brought to him, Defendant Tipton permitted the practices to continue and "personally ensured that OHP Troopers who used unreasonably excessive force went unpunished." *Id.* ¶ 34.  On at least one occasion, Defendant Tipton "disciplined an OHP Captain who attempted to discipline a Trooper . . . for using obviously excessive force on multiple occasions throughout 2022." *Id.* ¶ 35. Upon Plaintiff's information and belief, because the need for more and different training and supervision regarding use of force was "obvious," Defendant Tipton knowingly created a dangerous environment for citizens interacting with OHP troopers. *Id.* ¶ 31.

## II. STANDARD OF REVIEW

In analyzing a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III. DISCUSSION

### A. Relevant Standards

Citing 42 U.S.C. § 1983, Plaintiff claims that Defendant Tipton is individually liable in his supervisory capacity for Defendant Cox's use of excessive force in violation of Plaintiff's rights under the Fourth Amendment. *See* Compl. ¶¶ 3, 29-37. To succeed on a claim under § 1983, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that the violation "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

> A § 1983 claim may be based on supervisor liability.  Section 1983
>
> allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or [his] subordinates) of which "subjects, or causes to be subjected," that plaintiff "to the deprivation of any rights . . . secured by the Constitution."

*Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (omission in original) (quoting 42 U.S.C. § 1983).  "When a plaintiff sues an official under . . . § 1983 for conduct arising from his or her superintendent responsibilities, the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well."  *Id.* at 1198 (internal quotation marks omitted).

The Fourth Amendment protects individuals "against unreasonable searches and seizures."  U.S. Const. amend. IV.  Because this protection "pertains to the events leading up to and including an arrest of a citizen previously at liberty, excessive force claims arising during this period are generally reviewed under a relatively exacting 'objective reasonableness' standard."  *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010).

### B.  Whether Defendant Tipton is Entitled to Qualified Immunity

Defendant Tipton asserts that he is entitled to qualified immunity on Plaintiff's claim.  *See* Def.'s Mot. at 4-5.  "Qualified immunity protects officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted).  "Although

5

qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Id.* When qualified immunity is asserted in a motion to dismiss, "it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis and internal quotation marks omitted).

> In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct.

*Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted). Courts may exercise discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Court begins with the "clearly established" prong, by considering whether "the facts alleged . . . by" Plaintiff "support a claim of violation of clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 528 n.9 (1985). Typically, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Stewart v. Beach*, 701 F.3d 1322, 1330 (10th Cir. 2012) (internal quotation marks omitted). In this case, Plaintiff alleges that Defendant Tipton, in his supervisory position, violated her Fourth Amendment right to be free of excessive force by failing to properly train and supervise OHP troopers and failing to correct prior uses of excessive force. *See* Compl. ¶¶ 30-35. Therefore, the inquiry is whether, as of May 11, 2022, "clearly established law

6

would have put a reasonable official" in Defendant Tipton's position "on notice that his *supervisory conduct* would violate" Plaintiff's constitutional rights. *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018) (omissions and internal quotation marks omitted); *see also Dennis v. Pazen*, No. 23-1313, 2025 WL 1375635, at *2 (10th Cir. May 13, 2025).

The burden is on Plaintiff to respond to Defendant Tipton's assertion of qualified immunity by showing the asserted right was "clearly established at the time of the conduct at issue." *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted). "In other words, [Plaintiff] must identify a case where an official acting under similar circumstances as [Defendant Tipton] was held to have violated the Constitution." *Perry*, 892 F.3d at 1123.

> A plaintiff can demonstrate that a right is clearly established in three ways. First, a materially similar published case from the Supreme Court or Tenth Circuit may give an official fair notice that their specific conduct would violate a constitutional right. Second, the plaintiff can point to the clearly established weight of authority from other courts. In other words, even if there is no Supreme Court or Tenth Circuit case directly on point, a consensus of cases of persuasive authority may provide fair warning of unlawful conduct. Finally, there can be the rare case or extreme circumstance where the conduct in question has not previously been held unlawful, but a government official may still have notice that their conduct violates a constitutional right because it is so apparent as to apply with obvious clarity.

*Brown v. City of Tulsa*, 124 F.4th 1251, 1265 (10th Cir 2025) (alteration, omission, citations, and internal quotation marks omitted).

Here, Plaintiff advances arguments as to all three methods.

1. Whether the Right Was Clearly Established by a Materially Similar Published Case from the Supreme Court or the Tenth Circuit

Plaintiff relies solely upon the Tenth Circuit's published decision *McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1979), as clearly establishing that a reasonable officer in

7

Defendant Tipton's supervisory position would be on notice on the date of the traffic stop that his conduct would violate Plaintiff's Fourth Amendment rights. *See* Pl.'s Resp. at 13. Specifically, Plaintiff cites the standard for supervisory liability prescribed in *McClelland*, arguing: "The Tenth Circuit . . . held that police chiefs can be held liable under a theory of supervisory liability when the defendant 'was in a position of responsibility, knew or should have known of the misconduct, and yet failed to act to prevent future harm.'" *Id.* (quoting *McClelland*, 610 F.2d at 697).

Defendant Tipton objects that *McClelland* does not constitute clearly established law because subsequent decisions of the Supreme Court and the Tenth Circuit have modified the requirements for imposing supervisory liability under § 1983. *See* Def.'s Reply at 1-4 (citing *Dodds*, 614 F.3d at 1204; *Iqbal*, 556 U.S. at 677). Having considered the relevant authorities, the Court concurs with Defendant Tipton, as well as other district courts, that *McClelland* does not clearly establish the law giving rise to Plaintiff's Fourth Amendment claim post *Dodds* and *Iqbal*.

In *Iqbal*, the Supreme Court explained that "a supervisor's mere knowledge of his subordinate's discriminatory purpose" does not amount to the supervisor's own violation of the Constitution, as "supervisors may not be held accountable for the misdeeds of their agents" and are "liable only for [their] own misconduct." *Iqbal*, 556 U.S. at 677. The Tenth Circuit then considered that holding in *Dodds*, directing that

> when a plaintiff sues an official under . . . § 1983 for conduct "arising from his or her superintendent responsibilities," the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the

8

Constitution, but that the official by virtue of his own conduct and state of mind did so as well.

*Dodds*, 614 F.3d at 1198 (quoting *Iqbal*, 556 U.S. at 677).  The Tenth Circuit further explained, in *Schneider*, that to establish supervisory liability in § 1983 cases, the plaintiff "must show an 'affirmative link' between the supervisor and the constitutional violation." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). And, this showing "requires plausible allegations of '(1) personal involvement; (2) causation; and (3) state of mind.'"  *Pemberton v. Patton*, 673 F. App'x 860, 868 (10th Cir. 2016) (alteration omitted) (quoting *Schneider*, 717 F.3d at 767).

These decisions, entered after *McClelland* and prior to the relevant time period for Plaintiff's claim, undermine if not entirely displace the general standard outlined in *McClelland*.  Plaintiff's cited portion of the 1979 *McClelland* decision premised liability under § 1983 upon a finding that a defendant-supervisor "*knew or should have known* of the misconduct" of subordinates but "failed to act to prevent future harm."  *McClelland*, 610 F.2d at 697 (emphasis added).  Though not specifically referencing *McClelland*, the Tenth Circuit has indisputably recognized that this "mere knowledge" standard of supervisory liability is no longer applicable following *Iqbal*, *Dodds*, and *Schneider*:

> [The plaintiff] alleged that Director Patton was affirmatively linked to the deprivation . . . by virtue of Oklahoma statutes defining his duties as ODOC Director and authorizing the use of private prison contractors.  [The plaintiff] argues that this is sufficient under *Dodds* because, as the head of the ODOC, Director Patton knew, or should have known, that the deprivation was a policy or custom at DCF and he did nothing to stop it.
>
> We disagree . . . .  Where, as here, a plaintiff seeks to hold a supervisor accountable for a policy that causes the deprivation of a constitutional right, he must plausibly allege "more than 'a supervisor's mere knowledge of his

9

subordinate's' conduct." *Schneider*, 717 F.3d at 767 (quoting *Iqbal*, 556 U.S. at 677). His allegations must plausibly show "the defendant promulgated, created, implemented or possessed responsibility for the continued operation of the policy." *Dodds*, 614 F.3d at 1199. The sheriff in *Dodds* was potentially liable because he "may have *played more than a passive role* in the alleged constitutional violation—he may have deliberately enforced or actively maintained the policies in question at the jail." *Id.* at 1204 (emphasis added).

*Pemberton*, 673 F. App'x at 868 (alteration, footnote, and citation omitted).[2]

It follows that, because *McClelland* identified "a lower and outdated supervisory liability standard" than the one in place on May 11, 2022, Plaintiff's reliance upon that decision fails to show that clearly established law would have put a reasonable official in Defendant Tipton's position "on notice that his supervisory conduct would violate [Plaintiff's] constitutional rights." *Birchfield*, 2025 WL 1748066, at *6; *Perry*, 892 F.3d at 1123 (emphasis and internal quotation marks omitted); *see also Rodriguez v. Serna*, No. 17-cv-01147, 2019 WL 2340958, at *7 (D.N.M. June 3, 2019) (expressing "serious doubts" regarding the validity of *McClelland* in light of post-*Iqbal* authority); *cf. Dodds*, 614 F.3d

---

[2] Even if *McClelland* remains viable in some circumstances, such as when deliberate indifference is the applicable state-of-mind requirement for a supervisory liability claim, post-*McClelland* decisions have clarified that when, as here, a plaintiff alleges a Fourth Amendment violation the plaintiff must show that the supervisor's actions were not objectively reasonable. *See Dodds*, 614 F.3d at 1204 (holding that § 1983 claim based on supervisory liability requires showing that supervisor acted with "the same state of mind required" for the alleged underlying "constitutional deprivation"); *Webb v. Thompson*, 643 F. App'x 718, 724-25 (10th Cir. 2016) (holding, in case where the alleged underlying constitutional deprivation was a violation of the Fourth Amendment, that the district court erred by asking whether the supervisor acted knowingly or with deliberate indifference "[r]ather than asking whether [the supervisor's] actions were objectively reasonable"). *See also Birchfield v. Mulkey*, No. 24-CV-0256, 2025 WL 1748066, at *3 n.4 (N.D. Okla. June 24, 2025).

at 1200 ("*Iqbal* may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit.").

Accordingly, the Court finds that Plaintiff has not shown that the asserted right was clearly established by a published decision of the Supreme Court or the Tenth Circuit.

>    2.  Whether the Right Was Clearly Established by a Consensus of Cases of Persuasive Authority from Other Jurisdictions

"In the absence of binding precedent specifically adjudicating the right at issue, the right may still be clearly established based on a 'consensus of cases of persuasive authority' from other jurisdictions." *Ullery v. Bradley*, 949 F.3d 1282, 1294 (10th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)); *see Brown*, 124 F.4th at 1265.

Plaintiff cites several decisions from outside of the Tenth Circuit in attempting to show that the relevant Fourth Amendment right was clearly established: *Ingram v. Kubik*, 30 F.4th 1241 (11th Cir. 2022); *Barnes v. City of El Paso*, 677 F. Supp. 3d 594 (W.D. Tex. 2023); and *White v. City of Vineland*, 500 F. Supp. 3d 295 (D.N.J. 2020). *See* Pl.'s Resp. at 13-14.[3]  Defendant Tipton argues that these cases are factually distinct and not sufficiently cohesive to clearly establish the right underlying Plaintiff's claim. *See* Def.'s Reply at 4-6.

In *Ingram*, the Eleventh Circuit considered the assertion of qualified immunity by a sheriff who was sued for violation of the Fourth Amendment on the basis of supervisor liability for the alleged excessive force of his subordinate. *See Ingram*, 30 F.4th at 1247.

---

[3] As district court decisions, *Barnes* and *White* "do not necessarily settle constitutional standards" even in their own circuits. *Ullery*, 949 F.3d at 1300 (internal quotation marks omitted). They are considered here as applications of the law of their respective circuits.

The plaintiff claimed the subordinate's actions were the product of the sheriff's unofficial policy of not investigating or punishing previous excessive-force incidents. *See id.* at 1248-49, 1254. In denying dismissal, the Eleventh Circuit relied upon a pre-*Iqbal* decision that permitted imposition of supervisory liability "where the supervisor's improper custom or policy results in deliberate indifference to constitutional rights." *Id.* at 1254 (internal quotation marks omitted).

The district court in *Barnes*,[4] citing Fifth Circuit case law, stated that supervisors may be held liable for failing to train or supervise or for "failing to adopt a policy or practice" when the supervisor "'ha[s] acted with deliberate indifference.'" *Barnes*, 677 F. Supp. 3d at 617 (quoting *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)).[5] The district court in *White*, citing Third Circuit case law, similarly stated that "[a] supervisor can face Section 1983 liability if, 'with deliberate indifference to the consequences, he established and maintained a policy, custom, or practice which directly caused the constitutional harm.'" *White*, 500 F. Supp. 3d at 307 (alteration omitted) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

As a threshold matter, these three decisions do not represent a "robust" consensus of "persuasive," "unanim[ous]," out-of-circuit authority that places the constitutional

---

[4] *Barnes* was issued well after the May 11, 2022 traffic stop incident, so it could not have provided notice to Defendant Tipton regarding the legality of his conduct. *See Ullery*, 949 F.3d at 1300-01. The Court considers the decision in relevant part, however, because the Fifth Circuit authority it relies upon was issued prior to May of 2022.

[5] The relevant language of *Porter* and *Barnes* was taken from a pre-*Iqbal* opinion. *See Porter*, 659 F.3d at 446 (citing *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)).

question regarding the illegality of Defendant Tipton's conduct "beyond debate." *al-Kidd*, 563 U.S. at 742; *Ullery*, 949 F.3d at 1301. Further, to the extent these decisions suggest that, post *Iqbal*, supervisor liability may broadly be imposed under § 1983 based upon a supervisor's deliberate indifference, rather than by analyzing whether the supervisor acted with the requisite state of mind required for the alleged underlying constitutional deprivation, Plaintiff has not adequately shown that such decisions comport with the standards for supervisor liability pronounced in *Iqbal*. *See Dodds*, 614 F.3d at 1204 ("[A]fter *Iqbal*, Plaintiff can no longer succeed on a § 1983 claim against Defendant by showing that as a supervisor he behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation he alleges." (internal quotation marks omitted)). Nor has Plaintiff explained how these decisions square with the Tenth Circuit's direction that, for Fourth Amendment claims, the court "appl[ies] an objective reasonableness test," the court "do[es] not consider an actor's state of mind," and "the same standard applies to § 1983 claims against supervisors." *Webb*, 643 F. App'x at 724-25 (citing *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006), and *Porro*, 624 F.3d at 1327-28, in holding that the district erred in asking whether the supervisor acted knowingly or with deliberate indifference "[r]ather than asking whether [the supervisor's] actions were objectively reasonable").

Accordingly, these out-of-circuit cases do not clearly establish the right at issue.

13

3. <u>Whether the Right Was Clearly Established Because General Constitutional Principles Would Give Officials Fair Warning Their Conduct Is Unlawful</u>

Finally, Plaintiff argues that "[a]ny reasonable officer should have realized that [Defendant] Tipton's repeated allowance of his subordinates to engage in excessive force and punishment of those who try to hold the offending Troopers to account offends the Constitution." Pl.'s Resp. at 14. Defendant Tipton did not address this argument.

"[Q]ualified immunity does not protect an officer where the constitutional violation was so obvious under general well-established constitutional principles that any reasonable officer would have known the conduct was unconstitutional." *Rosales v. Bradshaw*, 72 F.4th 1145, 1157 (10th Cir. 2023). Such a demonstration of clearly established law has been found in the context of "particularly egregious facts" and "extreme circumstances" that should have caused "any reasonable officer" to "realize[]" a constitutional violation was occurring. *Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020); *accord Brown*, 124 F.4th at 1265.

Here, Plaintiff alleges that Defendant Tipton failed to sufficiently train OHP troopers and created or ratified an unwritten policy permitting the use of excessive force on cooperative civilians by preventing the punishment of troopers who used excessive force, leading to the alleged excessive force carried out by Defendant Cox on Plaintiff. *See* Compl. ¶¶ 30, 33-34. The Tenth Circuit's recent decision in *Dennis v. Pazen* is instructive to show why Defendant Tipton's alleged conduct is too far removed from the force used by Defendant Cox on May 11, 2022, to find that "any reasonable officer should have realized that [Defendant Tipton's actions] offended the Constitution." *Taylor*, 592 U.S. at 9. In *Dennis*, the Tenth Circuit held that the plaintiff did not clearly establish that a

14

nonpresent police captain who delegated authority regarding decisions to use force could be held liable for a Fourth Amendment excessive force violation committed by a subordinate. *See Dennis*, 2025 WL 1375635, at *3-4. Because the police captain's "authorizations to arrest and use force were made only in the abstract and from a distance," the Court held that the police captain was entitled to qualified immunity. *Id.* at *3. The *Dennis* Court found "material factual differences" between such authorizations and the superintendant conduct in prior cases where qualified immunity was denied, such as *Buck v. City of Albuquerque*, where a supervisor had been on the scene and keeping "a tight rein on his officers' actions" when the excessive force occurred. *Id.* at *3-4; *Buck*, 549 F.3d 1269, 1288 (10th Cir. 2008).

Even accepting Plaintiff's factual allegations as true, the Fourth Amendment's "general prohibitions" on excessive force "do not apply with obvious clarity to [Defendant Tipton's] conduct because he was not present when [Defendant Cox] interacted with [Plaintiff], did not have the opportunity to assess what force should be exercised . . . , and, at most, authorized [Defendant Cox] to . . . use force against [Plaintiff] only in the abstract and from a distance." *Birchfield*, 2025 WL 1748066, at *7 (internal quotation marks omitted). And Plaintiff has not shown through specific alleged facts, as opposed to conclusory assertions, that events leading up to the May 11, 2022 traffic stop were so egregious and extreme that any reasonable supervisor would be on notice of the alleged constitutional deprivation. *Cf. Taylor*, 592 U.S. at 8-9 (reversing a grant of qualified immunity where inmate was housed naked for six days in cells filled with human waste because "no reasonable correctional officer could have concluded that . . . it was

15

constitutionally permissible to house [the inmate] in such deplorably unsanitary conditions for such an extended period of time").

*C. Summary*

Because she has not pointed to binding authority or a consensus of persuasive authority, or shown that the unconstitutional nature of the conduct was obvious, Plaintiff has not shown that the law giving rise to the Fourth Amendment claim at issue was clearly established as of May 11, 2022. Therefore, Defendant Tipton is entitled to qualified immunity and to dismissal of Plaintiff's claim.[6]

CONCLUSION

Defendant Tim Tipton's Motion to Dismiss (Doc. No. 13) is GRANTED. Plaintiff's Fourth Amendment claim against Defendant Tipton is DISMISSED without prejudice.

IT IS SO ORDERED this 31st day of March, 2026.

_____
CHARLES B. GOODWIN
United States District Judge

---

[6] Based on this disposition, the Court need not address Defendant Tipton's alternative arguments for dismissal.

16